[No. 79265-8. En Banc.]
Argued October 23, 2007.     Decided March 20, 2008.

THE STATE OF WASHINGTON, *Respondent*, v. AZEL L. CHAVEZ, *Petitioner*.

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for petitioner.

*Deborah S. Kelly, Prosecuting Attorney,* and *Tracey L. Lassus, Deputy,* for respondent.

*Suzanne L. Elliott* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 C. JOHNSON, J. — This case asks us to determine whether a juvenile charged with a violent or serious violent

offense has a state constitutional right to a jury trial, though other juveniles do not, and whether the legislature's failure to define "assault" and the judiciary's development of the elements of the crime violate constitutional separation of powers. We affirm the Court of Appeals and hold Azel L. Chavez had no right to a jury trial in juvenile proceedings and that the legislature did not violate the separation of powers doctrine by permitting the judiciary to define "assault."

## FACTUAL AND PROCEDURAL HISTORY

¶2 Azel L. Chavez[1] was charged in juvenile court with three counts of attempted first degree murder, second degree unlawful possession of a firearm, first degree robbery while armed with a firearm, second degree assault while armed with a firearm, and second degree taking a motor vehicle without permission while armed with a firearm.[2] Clerk's Papers (CP) at 16-18. Upon charging, the State moved for a discretionary decline hearing to have Chavez tried as an adult, which Chavez challenged. As a result, two psychological experts were appointed, one for the State and one for the defense, and both opined that Chavez would be better served if he remained in the juvenile system. Both believed that the maximum sentence allowable in the juvenile system plus placement in the juvenile rehabilitation administration (JRA) would facilitate rehabilitation. Tr. of Sentencing (Apr. 15, 2005) at 22-25.

¶3 The State's motion to decline jurisdiction was denied, and the case proceeded to bench trial, where the trial judge found Chavez guilty on all seven counts. Chavez had no criminal history and was given a standard range disposition on the three counts of attempted murder. Pursuant to

---

[1] Chavez's birth date is June 3, 1990.

[2] Chavez was 14 years old at the time, so although the crimes included serious violent offenses, they did not automatically result in adult court jurisdiction. *See* RCW 13.04.030(1)(e)(v) (adult court has exclusive jurisdiction over serious violent offenses and first degree robberies committed by 16 and 17 year olds).

the 300 percent rule, no disposition was imposed on the other counts.[3] Chavez was sentenced to 309 to 387 weeks, plus a 12-month firearm enhancement. CP at 8-11.

¶4 In his appeal to the Court of Appeals, Chavez argued that juvenile offenders have a right to jury trial under the Sixth Amendment to the United States Constitution and under article I, sections 21 and 22 of the Washington State Constitution, and alternatively, that juveniles charged with serious offenses have the right to a jury trial under the federal and state constitutions, even if other juveniles do not. Chavez also argued that the absence of a legislative definition of the elements of "assault" and consequent judicially created definition violates the separation of powers doctrine.[4]

¶5 The Court of Appeals affirmed the trial court and held that the legislature did not violate the separation of powers doctrine by allowing the judiciary to define statutory terms with the common law. *State v. Chavez*, 134 Wn. App. 657, 659, 142 P.3d 1110 (2006). The court also held that Chavez had no right to a jury trial in juvenile proceedings. In rejecting Chavez's argument that juveniles must be afforded jury trials once juvenile proceedings become akin to adult criminal prosecutions, the court found that despite numerous amendments to the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW, the system remains focused on rehabilitation. *Chavez*, 134 Wn. App. at 664-65.

¶6 The court also rejected Chavez's claim that even if the bench trial requirement is constitutional in its general application, as applied to him it is not. In arriving at its conclusion, the court found that the trial judge's sentencing

---

[3] According to RCW 13.40.180(2), "[w]here a disposition is imposed on a youth for two or more offenses, the terms shall run consecutively, subject to the following limitations: . . . The aggregate of all consecutive terms shall not exceed three hundred percent of the term imposed for the most serious offense . . . ."

[4] Chavez also argued below that the trial court erroneously admitted his custodial statements in violation of *Miranda v. Arizona*, 384 U.S. 436, 471, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and erroneously admitted a 911 tape without proper foundation. Chavez raised none of these issues in his petition for review. Accordingly, these issues are not addressed.

approach, which relied heavily on the psychological experts' opinions, was more focused on rehabilitation than the adult criminal system would have been. *Chavez*, 134 Wn. App. at 665.

## ISSUES

A. Whether a juvenile charged with a serious offense has a right to a jury trial, though other juveniles do not.

B. Whether the legislature's failure to define assault and the judiciary's development of the elements of the crime violate constitutional separation of powers.

## ANALYSIS

### *Right to Jury Trial*

■ ¶7 We review the constitutionality of a statute de novo. *State v. Eckblad*, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004). Under Washington Constitution article I, section 21, "[t]he right of trial by jury shall remain inviolate" and under article I, section 22, "[i]n criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury." The legislature has mandated, however, that "[c]ases in the juvenile court shall be tried without a jury." RCW 13.04.021(2).

■ ¶8 This court has consistently concluded that because of well-defined differences between Washington's juvenile justice and adult criminal systems, the JJA does not violate these constitutional provisions. *See State v. Weber*, 159 Wn.2d 252, 264-65, 149 P.3d 646 (2006); *Monroe v. Soliz*, 132 Wn.2d 414, 939 P.2d 205 (1997); *State v. Schaaf*, 109 Wn.2d 1, 743 P.2d 240 (1987); *State v. Lawley*, 91 Wn.2d 654, 591 P.2d 772 (1979); *Estes v. Hopp*, 73 Wn.2d 263, 438 P.2d 205 (1968). While punishment is the paramount purpose of the adult criminal system, the policies of the JJA are twofold: to establish a system of having pri-

mary responsibility for, being accountable for, and responding to the needs of youthful offenders; and to hold juveniles accountable for their offenses. *State v. Posey*, 161 Wn.2d 638, 645, 167 P.3d 560 (2007).

¶9 Chavez does not propose wholesale invalidation of the JJA; in fact, Chavez concedes that under the act, minor offenses may still be dealt with in an informal, flexible manner geared toward rehabilitation. Rather, Chavez argues that for a juvenile, such as himself, who has been charged with a serious offense, the balance struck between punitive and rehabilitative philosophies is identical to that struck for adult offenders. He claims that except for the length of his sentence and conditions of his confinement, he was treated as an adult. For instance, because Chavez was charged with at least one violent offense, he was ineligible for deferred disposition.[5] He has been fingerprinted and photographed, has provided a DNA (deoxyribonucleic acid) sample, and has the possibility of being transferred to adult prison to complete his disposition. Also, Chavez argues the records relating to his offenses will never be sealed or destroyed and if he were to commit a crime as an adult, these offenses would be calculated into his offender score as adult convictions. Thus, petitioner argues that for juveniles such as himself, juvenile court is a formal, adversarial system with serious consequences and that failure to provide a jury trial mandates reversal of his adjudications. He cites to no case authority, however, supporting the remedy he is requesting.

---

[5] Chavez *nowhere* defines "serious offense." Based on his charges, however, it appears he equates serious offense with the statutory definition for a "violent offense." A juvenile is eligible for deferred disposition unless, among other things, they are charged with a violent offense. RCW 13.40.127(1)(a). The definition for "violent offense" includes "[a]ny felony defined under any law as a class A felony or an attempt to commit a class A felony" and "[a]ssault in the second degree." RCW 9.94A.030(50)(a)(i), (viii). "Serious violent offense" is a subcategory of violent offense and includes attempted murder in the first degree. RCW 9.94A.030(41)(a)(i), (ix). Robbery in the first degree is a class A felony. RCW 9A.56.200(2). Thus, Chavez was ineligible for deferred disposition because his charges included violent offenses—robbery in the first degree while armed with a firearm, three counts of attempted murder in the first degree, and assault in the second degree while armed with a firearm.

¶10 In support of his argument, Chavez includes an analysis of the six *Gunwall*[6] factors, asserting that the juvenile jury trial issue does not fall squarely within any controlling precedent. This court analyzed the *Gunwall* factors on this precise issue in *Schaaf*, 109 Wn.2d 1, and concluded that juvenile offenders are not entitled to jury trials under our state constitution. Important to the analysis was consideration of long-standing precedent and the state of law at that time, under which juvenile proceedings were still distinguishable from adult criminal prosecution. *Schaaf*, 109 Wn.2d at 16.

¶11 In his argument, Chavez highlights amendments to portions of the JJA, many occurring in 1997, and argues these changes make juvenile proceedings more akin to adult criminal prosecutions. These 1997 amendments were considered in *State v. J.H.*, 96 Wn. App. 167, 978 P.2d 1121, *review denied*, 139 Wn.2d 1014 (1999), where appellants likewise claimed as juveniles the right to a jury trial. After thorough consideration of statutory amendments, including the amendment giving "adjudication" the same meaning as "conviction" for purposes of future adult prosecutions, the court concluded *Schaaf*'s reasoning still applied: " 'while juvenile proceedings are similar to adult criminal prosecutions, enough distinctions still exist to justify denying juvenile offenders the right to a trial by jury.' " *J.H.*, 96 Wn. App. at 183-84 (quoting *Schaaf*, 109 Wn.2d at 22); *see also State v. Tai N.*, 127 Wn. App. 733, 740, 113 P.3d 19 (2005) (finding "recent decisions do not compel a change to well-established precedent holding that nonjury trials of juvenile offenders are constitutionally sound"), *review denied*, 156 Wn.2d 1019 (2006). We find the court's reasoning in *J.H.* to be convincing and the holding in accord with long-standing precedent.

¶12 Indeed, the claim that changes to the juvenile justice system make its focus punitive and no longer rehabilitative has been posited and consistently rejected by this court. *Cf.*

---

[6] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

*Weber*, 159 Wn.2d at 264 (finding that while a goal of juvenile adjudication is rehabilitation, where individuals are not rehabilitated and reoffend as adults, they may be punished in a manner that considers their preceding juvenile criminal behavior).[7] After enactment of the JJA in 1977, this court rejected the argument that the act created a system that was no longer rehabilitative, despite the act's new emphasis on the juvenile's accountability for criminal behavior. *Lawley*, 91 Wn.2d at 656-59.

¶13 This court has since concluded that amendments to the JJA have not changed the rehabilitative nature of the juvenile system to the extent that a jury trial would be required. Recently, we recognized an amendment to a statute concerning juvenile court jurisdiction and the statute's legislative history as reinforcing the legislature's intent for juveniles to receive treatment and rehabilitation through juvenile disposition. *See Posey*, 161 Wn.2d at 647 (16 year old charged with a serious violent offense was automatically declined to adult court jurisdiction, where he was acquitted of the charge; for remaining charges, remand to juvenile court was proper because legislative intent underlying the automatic decline provision is to impose more severe penalty on a juvenile who *has committed* a serious violent offense). Similarly, in *Schaaf*, we rejected petitioners' argument that amendments to a statute affording a juvenile several of the same judicial rights available in an adult prosecution made the proceedings so akin that a jury trial was required. *Schaaf*, 109 Wn.2d at 12-13. And in *Monroe*, 132 Wn.2d 414, we upheld a statute permitting

---

[7] In *Weber*, Justice Madsen's dissent stated that "the juvenile justice system is fundamentally different from and serves different purposes than the criminal justice system.

"While the [JJA] has been amended many times over the years, the act has always focused on the needs of the juvenile and the goals of rehabilitation and accountability.

". . . It is because of the fundamental difference between the juvenile justice system and the criminal system that the United States Supreme Court and this state's appellate courts have held that there is no right to a jury trial in the juvenile system." *Weber*, 159 Wn.2d at 283-84 (Madsen, J., dissenting) (citations omitted).

transfer of a juvenile offender to adult prison against the claim that it violated the right to jury trial and created a punitive, nonrehabilitative juvenile system. We found that an adult criminal conviction carries far more serious ramifications for an individual than a juvenile adjudication, no matter where the juvenile serves his time. *Monroe,* 132 Wn.2d at 419-21.

¶14 The penalty, rather than the criminal act committed, is yet another factor that this court has considered to distinguish the juvenile code from the adult criminal system. *See Schaaf,* 109 Wn.2d at 7-8 (recognizing that a juvenile may be eligible for a diversion agreement in lieu of prosecution and, if prosecuted and found guilty, will normally be sent to a juvenile detention facility).

¶15 In *J.H.,* the Court of Appeals noted that the juvenile code provides for much more lenient penalties, a difference that weighs heavily in the balance between the two systems for purposes of a juvenile's right to a jury trial. *J.H.,* 96 Wn. App. at 182. The court suggested that such lenience and access to programs available only through the JRA were reasons why none of the 12 juveniles involved in the appeal requested the juvenile court decline jurisdiction and transfer the matter to the adult criminal system where a jury trial would have been available. *J.H.,* 96 Wn. App. at 183. We agree.

¶16 Here, Chavez opposed the State's motion to decline juvenile jurisdiction and to transfer to the adult system where he would have had a jury trial. Importantly, by remaining in the juvenile system, Chavez received a substantially lesser penalty upon finding of guilt. Whereas in the juvenile system, one count of attempted first degree murder is punishable by 103 to 129 weeks (about 2 to 2½ years), the same count in the adult criminal system is punishable by 180 to 240 months (15 to 20 years).[8] This illustration reinforces the difference between the predomi-

---

[8] The standard sentence imposed for an anticipatory offense, such as attempted first degree murder, is 75 percent of the standard sentence range of the completed offense, determined by locating the offender score and offense seriousness level.

nantly rehabilitative philosophy of the juvenile justice system and the punitive philosophy of the adult criminal system.

¶17 Though several of Chavez's offenses made him ineligible for alternative dispositions, the State correctly notes that rehabilitative services in incarceration are still available and include educational services, treatment options, and spiritual and cultural programs. Notably, both defense and State experts, reporting in response to the State's motion to decline jurisdiction, agreed that Chavez's rehabilitative needs would be better served by his remaining in the juvenile justice system. Tr. of Sentencing (Apr. 15, 2005) at 22-25. Specifically, the expert for the defense reported that "the psychotherapy available in Juvenile Institutions would be much more likely to be affective [sic] than the psychotherapy available in adult prisons." Tr. of Sentencing (Apr. 15, 2005) at 23-24.

■ ¶18 Chavez urges us to depart from our precedent that compares the adult and juvenile systems as a whole and to focus on the way the system treats the individual defendant in each case. However, while statutory amendments may have arguably eliminated some distinctions between juvenile and adult criminal systems, Chavez does not demonstrate why violent and serious violent offenders in particular are so divorced from the rehabilitative emphasis of the juvenile justice system as to be entitled to a jury trial. We are not persuaded that Chavez's charges made him ineligible for *all* the special rehabilitative programs available to other juveniles. As the Court of Appeals noted, Chavez remains qualified for rehabilitative programs while incarcerated. We hold that the juvenile justice system has not been so altered that juveniles charged with violent and serious violent offenses have the right to a jury trial.

---

RCW 9.94A.595. Having no prior adjudications, Chavez's offender score was zero. The standard range for first degree murder is 240 to 320 months, RCW 9.94A.515, .510; thus, had Chavez been tried as an adult, his standard range for one count of attempted first degree murder would have been 180 to 240 months.

## Separation of Powers

■ ¶19 The state constitution divides the political powers into legislative authority, executive power, and judicial power. *State v. Moreno*, 147 Wn.2d 500, 506, 58 P.3d 265 (2002). Each branch wields only the power given, and a violation of the separation of powers occurs when the activity of one branch of government invades the province of another branch of government. *Moreno*, 147 Wn.2d at 506. However, the separation of powers doctrine allows for some interplay between the branches of government. *Spokane County v. State*, 136 Wn.2d 663, 672, 966 P.2d 314 (1998).

¶20 Where a separation of powers violation has been alleged, the question is not whether two branches of government engage in coinciding activities, but instead whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another branch. *Spokane County*, 136 Wn.2d at 667.

¶21 Chavez argues that the legislature's failure to define criminal assault violates the separation of powers doctrine by leaving the formulation of the definition to the courts. Thus, he argues his second degree assault adjudication must be reversed and the underlying charge dismissed.

■ ■ ¶22 Unlike some crimes, which have a general definition section,[9] the legislature has not provided a general definition for the crime of "assault." *But see State v. Wadsworth*, 139 Wn.2d 724, 743, 991 P.2d 80 (2000) (concluding, "[t]he Legislature has an established practice of defining prohibited acts in general terms, leaving to the judicial and executive branches the task of establishing specifics"). Other than citing cases expressing the general principle that the legislature defines crimes and may not delegate to the judiciary purely legislative functions, petitioner fails to demonstrate a separation of powers violation.

---

[9] See, e.g., RCW 9A.32.010, which provides a general definition for the crime of "homicide."

¶23 Courts are of course legitimately the source of the common law, and when the legislature adopted the current criminal code in 1975, it made the common law supplemental to the code. RCW 9A.04.060.[10] Long before then, the common law provided for the definition of "assault" in criminal cases. *See, e.g., State v. Rush*, 14 Wn.2d 138, 127 P.2d 411 (1942). The legislature can be deemed to have acquiesced in the definition when it supplemented the criminal code with the common law in 1975. Chavez cites no authority suggesting that the Court of Appeals erred on this point; thus, we affirm the Court of Appeals and hold there is no separation of powers violation.

## CONCLUSION

¶24 We affirm the Court of Appeals holding that Chavez had no right to a jury trial in juvenile proceedings. We also affirm the Court of Appeals holding that the legislature did not violate the separation of powers doctrine by permitting the judiciary to define through common law the elements of assault.

ALEXANDER, C.J.; OWENS, FAIRHURST, and J.M. JOHNSON, JJ.; and BRIDGE, J. PRO TEM., concur.

¶25 MADSEN, J. (dissenting) — Several times this court has been faced with the question of whether juveniles are entitled to a jury trial, and each time the court has answered "no." We have indicated, however, that should the juvenile system become sufficiently like the adult criminal justice system, the right to jury trials for juveniles may be restored. *E.g., State v. Lawley*, 91 Wn.2d 654, 591 P.2d 772 (1979); *Monroe v. Soliz*, 132 Wn.2d 414, 939 P.2d 205 (1997); *see* CODE OF 1881, ch. 87, § 1078.

---

[10] RCW 9A.04.060 states, "The provisions of the common law relating to the commission of crime and the punishment thereof, insofar as not inconsistent with the Constitution and statutes of this state, shall supplement all penal statutes of this state and all persons offending against the same shall be tried in the courts of this state having jurisdiction of the offense."

¶26 Recent developments have tipped the scales for juveniles faced with charges of serious offenses, as in this case, and now require the right to trial by jury. First, as counsel for the juvenile in this case urge, there are numerous parallels between the proceedings in his case and those in the cases of adults charged with similar crimes.[11] And while it is still true that rehabilitation is the defining feature of the juvenile justice system to a greater degree than in the adult system, recognizing a right to trial by jury is not inconsistent with this defining aspect of the juvenile justice system. There is no fundamental incompatibility between a rehabilitative juvenile justice system that nevertheless has many of the hallmarks of the adult system and a juvenile justice system that includes the right to the protection of a jury of one's peers.[12]

¶27 Second, an additional reason adds significant weight to the scale and mandates jury trials, particularly with regard to serious offenses that can lead to serious criminal history. This second reason finds explanation in this court's decision in *State v. Weber*, 159 Wn.2d 252, 283, 149 P.3d 646 (2006).

¶28 The issue in *Weber* was whether a juvenile adjudication could be used as criminal history to increase the sentence for a later adult conviction, in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). In *Apprendi*, 530 U.S. at

---

[11] Among circumstances that counsel describe are the legislature's equation of the meaning of "adjudication" and "conviction" (RCW 13.04.011(1) states, " '[a]djudication' has the same meaning as 'conviction' in RCW 9.94A.030, and the terms must be construed identically and used interchangeably"); that in many respects, the goals of the adult and juvenile systems have reached similar balances in terms of punishment and rehabilitation; that confidentiality and privacy have increasingly been eliminated from juvenile proceedings; that many juveniles convicted of certain sex offenses must register as sex offenders; and that juveniles must, like adults, submit to collection of personal data like fingerprints, DNA (deoxyribonucleic acid), and blood for HIV (human immunodeficiency virus) testing.

[12] The protection of a jury of one's peers is already afforded juveniles for whom juvenile jurisdiction is declined. *See* ch. 2.36 RCW (containing provisions for selection and qualifications of jurors).

490, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely*, 542 U.S. at 303, the Court explained that "statutory maximum" for this purpose "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Emphasis omitted.)

¶29 The ultimate question for the court in *Weber* was whether a prior juvenile adjudication had sufficient procedural safeguards to negate any need for a jury determination of the fact of the conviction. The majority in *Weber* agreed with the State that juvenile adjudications have sufficient procedural safeguards to qualify as prior convictions under the *Apprendi* exception. *Weber*, 159 Wn.2d at 263-65.

¶30 However, a critical component of the due process required for a prior conviction to come within the "prior conviction" exception recognized in *Apprendi* is the right to trial by jury. In *Jones v. United States*, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999), the Court explained why it had held that a prior conviction could be used as a sentencing factor to increase punishment for a later conviction. The Court said that "unlike virtually any other consideration used to enlarge the possible penalty for an offense, . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and *jury trial guarantees*." *Id.* at 249 (emphasis added); *see Apprendi*, 530 U.S. at 475-76 (discussing *Jones*). "[I]n order to fall within the prior conviction exception to the rule in *Apprendi*, a juvenile adjudication must have had the same constitutional safeguards in place as in *Jones*, in particular the right to trial by jury and proof beyond a reasonable doubt." *Weber*, 159 Wn.2d at 282 (Madsen, J., dissenting).

¶31 Because under *Weber* a juvenile conviction can now be used to increase a sentence for a subsequent offense with-

out a jury determination of the fact of the juvenile conviction, the court should assure that juvenile adjudications in fact have the requisite procedural safeguards upon which the "prior conviction" exception is predicated, including the right to trial by jury in the juvenile proceeding.

¶32 I would hold that the juvenile in this case has a right to trial by jury.

SANDERS and CHAMBERS, JJ., concur with MADSEN, J.