# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74000-8-I |
| Respondent, | ) | |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| NICHOLAS J. SPRINGFIELD, | ) | UNPUBLISHED OPINION |
| B.D. 7/9/99, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 26, 2016 |
| | ) | |

APPELWICK, J. — Springfield appeals his juvenile conviction of attempted robbery in the first degree. He contends that the evidence presented at trial was insufficient to sustain his conviction. He also contends that his federal and state constitutional rights were violated when the trial court did not allow a jury trial for his juvenile adjudication. Lastly, Springfield submitted a statement of additional grounds for review in which he alleges judicial bias, prosecutorial misconduct, and police misconduct. We affirm.

## FACTS

M.S. left class at Ballard High School early on January 9, 2015 for an appointment. M.S. walked through an alley that led to the parking lot. He observed three young men in the alley. At the time, M.S. was wearing a pair of headphones. One of the young men in the alley approached him as he walked by. The young

man demanded M.S.'s headphones. He then removed a gun from his pants and pressed it against M.S.'s leg. M.S. refused to hand over his headphones and walked away to meet his mother in the school parking lot. M.S. later identified Nicholas Springfield, a juvenile, as the attempted robber. M.S. estimated that he was face-to-face with Springfield for approximately 10 seconds.

M.S. initially did not tell his mother about what had just occurred. Before taking M.S. to his appointment, M.S. his mother drove to a nearby Goodwill storeM.S., where M.S. told her about the attempted robbery. M.S.'s mother immediately called the school. She and M.S. then spoke with Ballard security guard Vilando Wynter via phone. During this conversation with Wynter, M.S. stated the number of people present during the encounter and the location, but he did not identify the individual who demanded the headphones. After a short conversation, M.S. returned to school to meet with security.

M.S. met security near Ballard High. Seattle Police officers had had detained Springfield and frisked him for weapons. The officers did not recover any weapons.

The officers then met with Ballard High School Security Officer Craig Plummer. M.S. testified that when he approached the officers and Plummer, he observed Springfield in the custody of the officers. M.S. then identified Springfield as the individual who attempted to rob him. M.S. testified that he recognized him and knew his name from previous encounters. Springfield was charged with attempted robbery.

2

At trial, M.S. identified Springfield as the individual that demanded his headphones at gun point. The trial court found that M.S.'s testimony and identification of Springfield was sufficiently reliable. Accordingly, the trial court convicted Springfield of attempted robbery in the first degree. The court sentenced Springfield to 27 weeks of commitment to the Juvenile Rehabilitation Administration, and nine months of court-ordered supervision. Springfield appeals.

## DISCUSSION

Springfield makes three arguments on appeal. First, he argues that the evidence at trial was insufficient to sustain a conviction for attempted robbery. Second, he argues that the trial court violated his state and federal constitutional rights by not permitting a jury trial for his juvenile proceeding. Third, he asserts judicial bias, prosecutorial misconduct, and police misconduct.

I.   Sufficient Evidence of Attempted First Degree Attempted Robbery

Springfield argues that the trial court erred in ruling that the evidence was sufficient to sustain a conviction of attempted robbery in the first degree. Specifically, Springfield argues that there was insufficient evidence to prove that he was the person who committed the attempted robbery, and thus the prosecution failed to carry its burden with respect to identity. Springfield asserts that, because he was identified by only M.S. and M.S.'s credibility was called into question at trial, the evidence was insufficient to prove identity beyond a reasonable doubt.

When faced with a challenge to the sufficiency of the evidence, this court asks whether any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). In doing so, we view the evidence in the light most favorable to the State. Id. at 221. A claim of insufficient evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Credibility determinations are for the trier of fact, and we do not review them on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property. RCW 9A.56.190. A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime. RCW 9A.28.020. A person commits a robbery in the first degree if the defendant is armed with a deadly weapon or displays what appears to be a firearm or other deadly weapon. RCW 9A.56.200(1).

Springfield points to various portions of the record to support his argument that the evidence presented was insufficient to support a conviction of attempted robbery. First, Springfield cites M.S.'s conflicting accounts of whom he told first about the attempted robbery. At the bench trial, M.S.'s testimony contained some inconsistencies compared to his original statement to police. Most notably, M.S. originally told police in a recorded statement that he saw a friend immediately prior to the attempted robbery and told the friend to leave as Springfield approached

4

him. But, in his testimony, M.S. stated that he did not remember anyone else being present in the alley at the time of the incident. M.S. also told police that he had told a friend about the incident once they "were inside." During his testimony, M.S. stated that the first person he told about the incident was his mother and that he could not recall telling a friend about the incident. Springfield also notes that M.S. testified that Springfield removed the gun from either his pocket or waistband. But, there was evidence that the pants Springfield was wearing that day had pockets that were too small and a waistband that was too flimsy to hold a gun.

Springfield claims that this identification was not reliable due to "the lack of consistent evidence." This court will not second guess a fact-finder's credibility determination. Camarillo, 115 Wn.2d at 71. We will not disturb the trial court's finding that M.S.'s identification was credible.

Springfield next argues that Plummer, a Ballard High security guard, deliberately facilitated a false identification of Springfield based on personal disdain for Springfield. He points to Plummer's postarrest statement to N.J.S., " '[I'll] beat the hell out of you,' " as evidence of this bias against N.J.S.[1] Plummer's disdain for Springfield does not establish that a false identification by M.S. occurred. No other evidence supports that theory. During his testimony, M.S. specifically identified Springfield as the individual who attempted to rob him. M.S.

---

[1] N.J.S. also argues that the trial judge's fully disclosed prior relationship with a testifying detective warranted recusal. But, a prior relationship with a witness would only be grounds for recusal if nonrecusal is " 'manifestly unreasonable or exercised on untenable grounds, or for untenable reasons.' " State v. Gentry, 183 Wn.2d 749, 763, 356 P.3d 714 (2015) (quoting Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999)). Nothing in the record suggests that the trial court's actions were manifestly unreasonable.

testified that he knew N.J.S.'s name and physical appearance from previous encounters. And, other witnesses testified that M.S. identified Springfield during the meeting with police shortly after the attempted robbery took place. The trial court found this testimony credible, and we will not disturb that finding.

Viewing the evidence in the light most favorable to the state, we hold that sufficient evidence supports Springfield's conviction for attempted robbery in the first degree.

## II. Juvenile Right to Jury Trial

Springfield also argues that the trial court violated Springfield's federal and state constitutional rights by not providing him with a trial by jury. He argues that this violated both the Sixth Amendment of the U.S. Constitution, and article I sections 21 and 22 of the Washington Constitution. In effect, this argument seeks to invalidate RCW 13.04.021(2), which states that "[c]ases in the juvenile court shall be tried without a jury." In support of this argument, N.J.S. asserts that consequences of juvenile adjudications have become "nearly indistinguishable" from adult adjudications, and therefore require a trial by jury.

Whether a juvenile is constitutionally entitled to a trial by jury is a question of law that we review de novo. State v. Womac, 160 Wn.2d 643, 649, 160 P.3d 40 (2007). The Washington Supreme Court addressed this question in State v. Chavez, 163 Wn.2d 262, 272, 180 P.3d 1250 (2008). In that case, Chavez argued that juvenile offenders have a right to a jury trial under the Sixth Amendment to the United States Constitution and under article I, sections 21 and 22 of the Washington State Constitution. Id. at 266. The court unequivocally rejected this

6

argument. Id. at 272. It reasoned that while punishment is the paramount purpose of the adult criminal system, the policies of the Juvenile Justice Act (JJA), ch. 13.40 RCW, are twofold: to establish a system of having primary responsibility for, being accountable for, and responding to the needs of youthful offenders, and to hold juveniles accountable for their offenses. Id. at 267-68. Springfield's arguments are nearly identical to those made by Chavez. Although he asserts that the juvenile justice system has become similar to the adult criminal system such that a jury trial is required, Chavez still controls. Under Chavez, juveniles do not have a right to a jury trial under the Washington Constitution. Id. at 272. The trial court did not err in denying Springfield a jury trial.[2]

III.    Statement of Additional Grounds for Review

Springfield makes three additional arguments in a statement of additional grounds for review. First, he argues that the trial court's findings were a result of a bias against Springfield. Second, he argues that the prosecution engaged in prosecutorial misconduct by presenting testimony that contradicted a videotape recording. Third, he argues that the police failed to properly investigate verbal abuse by Plummer and therefore his conviction should be overturned.

A.  Judicial Bias

Springfield claims that a handful of the trial court's determinations reflect a judicial bias that influenced the trial court's findings. First, he claims that the trial

---

[2] We also note that, contrary to Springfield's arguments, the Sixth Amendment to the United States Constitution does not require a jury trial in juvenile proceedings. McKeiver v. Pennsylvania, 403 U.S. 528, 545, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971); see also United States v. Juvenile, 228 F.3d 987, 990 (9th Cir. 2000).

court's finding that Wynter was not credible is evidence of bias. Wynter testified at a CrR 3.5 hearing regarding Springfield's willingness to speak with police. Although the trial court stated during a colloquy with counsel that it did not find Wynter credible, the court ultimately ruled in Springfield's favor on this issue. The court relied on a videotape recording in suppressing Springfield's later incriminating statements. Given that the trial court ruled in favor of Springfield and suppressed his statements, there is no evidence of bias with respect to the CrR 3.5 hearing. Moreover, a trial court's credibility determination alone is not sufficient to prove judicial bias, especially given that the trial court ruled in favor of Springfield on the ultimate CrR 3.5 issue. In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004) ("Judicial rulings alone almost never constitute a valid showing of bias.").

B. Prosecutorial Misconduct

Springfield also claims that the prosecution committed misconduct by presenting false testimony. He asserts that the substance of a police video recording is indisputable, and because M.S.'s testimony contradicted an indisputable videotape recording, we must disregard it. According to Springfield, the videotape establishes that Plummer secretly suggested to M.S. that he identify Springfield as the individual who robbed him.

A conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the fact-finder. State v. Larson, 160 Wn. App. 577, 594, 249 P.3d 669 (2011). But, Springfield has not designated the videotape as part of

the appellate record. Therefore, we cannot consider his prosecutorial misconduct arguments. State v. Wade, 138 Wn.2d 460, 465, 979 P.2d 850 (1999) ("An appellate court may decline to address a claimed error when faced with a material omission in the record.").

C. Police Misconduct

Finally, Springfield argues that his conviction should be overturned because police failed to report or investigate a threat by Plummer against Springfield. Shortly following his arrest, Plummer told Springfield that he "want[ed] to beat the hell out of you," or something similar. Even assuming Plummer's statement amounted to a crime, Springfield has failed to demonstrate how the police's failure to investigate is material to his case, let alone is grounds for reversal of his conviction.

We affirm.

WE CONCUR: