# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49658-5-II |
| Respondent, | |
| v. | |
| M.A.G., JR., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. – M.A.G., Jr.[1] appeals from his juvenile disposition order finding him guilty of attempted first degree rape of a child and first degree child molestation involving 8-year-old K.E.[2] M.A.G. contends that the trial court erred in admitting K.E.'s hearsay statements and that RCW 13.04.021 is unconstitutional because it deprived him of his right to a jury trial. We affirm.

## FACTS

16-year-old M.A.G. and his family lived with K.E.'s aunt. K.E.'s aunt is M.A.G.'s grandmother. In August 2015, while K.E. was spending the night at her aunt's home, M.A.G. brought K.E. to the carport area next to the home's garage. M.A.G. took K.E. behind a couch in

---

[1] The case name has been changed to *State v.M.A.G., Jr.* in accordance with an amendment to RAP 3.4 and Gen. Ord. of Division II, *In Re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018).

[2] We use initials instead of names for victims of sex crimes to protect their privacy. Gen. Order 2011-1 of Division II, *In re Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App Aug. 23, 2011).

the carport and, according to K.E., he pulled down her pants and put "his private" on K.E.'s "private" and her "butt." 1 Verbatim Report of Proceedings (VRP) (September 6, 2016) at 33. M.A.G. stopped because "K.E.'s butt" was "too small." Clerk's Papers (CP) at 43. After returning home, K.E. told her mother, who reported the incident to police.

The State charged M.A.G. with attempted first degree rape of a child and first degree child molestation. A child forensic interviewer for the State interviewed K.E. K.E. disclosed to the interviewer that M.A.G. touched "her vagina and butt using his hands and penis." CP at 44. K.E. further disclosed that M.A.G. tried to "hump" her. CP at 44.

Pretrial, the trial court held a hearing to determine the admissibility of K.E.'s hearsay statements to her mother and the child forensic interviewer. During its oral ruling, the trial court stated, "I'm not convinced that there was a set plan to plant this in her head by an adult and get her involved in a feud between the mother and the daughter or any other member of the family." 2 VRP (Sept. 20, 2016) at 227. The trial court continued:

> The timing of the declaration in relationship between the declarant and the witness, it doesn't shock the conscience that she would disclose these things to her mother. The timing of the declaration was certainly within reason in terms of its proximity to when the alleged event occurred. This is not five years later, two years later or even a year later. This is within a fairly short period of time.

2 VRP (Sept. 20, 2016) at 227.

The trial court found in its written order that:

1. K.E. has no apparent motive to lie;

2. K.E. is generally of good character;

3. K.E. made statements to her mother . . . and child forensic interviewer . . . and those statements, though at different times with a different purpose, were generally consistent;

4. K.E.'s statements were spontaneous as defined by the case law;

5. There is nothing about the timing of K.E.'s statements that suggests an improper motive, nor does anything about the relationship between K.E. and the persons she talked to;

6. The possibility K.E.'s recollection is faulty is remote;

7. Based on the totality of the circumstances surrounding the making of K.E.'s statements, there is no reason to believe K.E. misrepresented [M.A.G.'s] involvement.

CP at 35-36. The trial court concluded that K.E.'s statements to her mother and to the child forensic interviewer were admissible.

After a bench trial, the trial court found M.A.G. guilty as charged. The court sentenced him to 15-36 weeks on the attempted rape of a child charge and 30-40 weeks on the child molestation charge.

M.A.G. appeals.

## ANALYSIS

A.    ADMISSIBILITY OF CHILD HEARSAY STATEMENTS

M.A.G. first contends the trial court erred in admitting K.E.'s hearsay statements to her mother and the child forensic interviewer. He argues that the trial court erred in finding K.E.'s hearsay statements reliable after reviewing the *Ryan*[3] factors. We disagree.

1.    Standard of Review

We review the trial court's decision to admit child hearsay evidence for an abuse of discretion. *State v. Borboa*, 157 Wn.2d 108, 121, 135 P.3d 469 (2006). A trial court abuses its

---

[3]  *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984).

discretion only when its decision is manifestly unreasonable or is based on untenable reasons or grounds. *State v. C.J.*, 148 Wn.2d 672, 686, 63 P.3d 765 (2003). Because only the trial court has the opportunity to see and evaluate the child and other witnesses, it is in the best position to determine the reliability of child hearsay statements. *State v. Pham*, 75 Wn. App. 626, 631, 879 P.2d 321 (1994), *review denied*, 126 Wn.2d 1002 (1995). As a result, "[t]he trial court is necessarily vested with considerable discretion in evaluating the indicia of reliability." *C.J.,* 148 Wn.2d at 686.

We review challenges to findings of fact to determine whether substantial evidence supports each challenged finding. *State v. Halstien*, 122 Wn.2d 109, 128-29, 857 P.2d 270 (1993). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the premise's assertion. *Id.* at 129.

    2.    Legal Principles

Under RCW 9A.44.120(1), (2)(a), (b), inadmissible hearsay statements of a child witness under the age of 10 are admissible in a criminal case when (1) the statements describe sexual or physical abuse of the child; (2) the court finds that the time, content, and circumstances of the statements provide sufficient indicia of reliability; and (3) either the child testifies at the proceedings or the child's statements are supported with corroborative evidence of the act. *See also State v. Kennealy*, 151 Wn. App. 861, 880, 214 P.3d 200 (2009), *review denied*, 168 Wn.2d 2012 (2010).

*State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984) provides nine factors to guide our analysis in assessing the reliability of the child's out-of-court statement. The *Ryan* factors are:

"(1) [W]hether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; . . . (5) the timing of the declaration and the relationship between the declarant and the witness"[;] . . . [(6)] the [lack of any] express assertion about past fact[; (7) whether] cross examination could not show the declarant's lack of knowledge [; (8) whether] the possibility of the declarant's faulty recollection is remote[; and (9) whether] the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

103 Wn.2d at 175-76 (quoting *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982)). Not every factor needs to be met for a statement to be sufficiently reliable; the factors need only be "'substantially met.'" *State v. Woods*, 154 Wn.2d 613, 623-24, 114 P.3d 1174 (2005) (quoting *State v. Swan*, 114 Wn.2d 613, 652, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991)). Moreover, no single factor is dispositive and we strive to determine whether the factors are substantially met based on an overall evaluation of the factors. *Kennealy*, 151 Wn. App. at 881.

M.A.G. argues the trial court improperly applied factors three, four, five, and six. We hold that the trial court did not abuse its discretion in its consideration of the *Ryan* factors, except factors six and seven,[4] and finding that the *Ryan* factors were substantially met.

3.      *Ryan* Factor Three – Whether More Than One Person Heard the Statements

M.A.G. first argues that K.E.'s disclosure to both her mother and the child forensic interviewer does not demonstrate reliability. We disagree.

When a child discloses to more than one person and when those individuals are "in a position of trust with a child, this factor is likely to enhance the reliability of the child's statement."

---

[4] Factors six and seven no longer apply. *See State v. Leavitt*, 111 Wn.2d 66, 75, 758 P.2d 982 (1988) (every statement a child makes concerning sexual abuse will be a statement relating a past fact); *State v. Stange*, 53 Wn. App. 638, 647, 769 P.2d 873 (cross-examination could in every case possibly show error in the child hearsay statement), *review denied*, 113 Wn.2d 1007 (1989).

*Kennealy*, 151 Wn. App. at 884. Here, the trial court found that K.E. made her statements to her mother and a forensic interviewer, and that although K.E.'s statements were made at different times and with a different purpose, the statements were consistent. The trial court properly considered K.E.'s disclosure to both her mother and the child forensic interviewer and did not abuse its discretion in finding that K.E.'s disclosures demonstrated reliability.

4.       *Ryan* Factor Four – Spontaneity of Statements

M.A.G. next takes issue with factor four, arguing that the trial court wrongly "concluded the statements were spontaneous." Br. of Appellant at 7. It appears M.A.G. is actually arguing substantial evidence does not support the trial court's *finding* that "K.E.'s statements were spontaneous as defined by the case law." CP at 36.

K.E.'s mother testified that K.E. was acting strangely after returning home from her aunt's and that she was concerned because K.E. had been molested before. K.E. told her mother she did not "want to tell" what happened. 1 VRP (Sept. 6, 2019) at 81. K.E.'s mother told K.E. that she was almost nine-years-old and that "nine year-old little girls have to tell their mom more than what they used to." 1 VRP (Sept. 6, 2019) at 81. K.E.'s mom testified that K.E. then told her that M.A.G. "took her outside . . . and he tried to put his penis inside her, but . . . it was too big and that he hurt her, even with his fingers." 1 VRP (Sept. 6, 2019) at 81-82. The child forensic interviewer testified that she interviewed K.E. and that K.E. made disclosures to her. During the interview, K.E. disclosed that M.A.G. touched her on her vagina and buttocks using his hands and penis and that he tried to "hump" her. CP at 44.

A child's answers for purposes of this factor are spontaneous if the questions are not leading or suggestive. *State v. Young*, 62 Wn. App. 895, 901, 802 P.2d 829 (1991). Here, K.E.'s

mother testified that K.E. was acting differently when she got back from her aunt's and she questioned K.E. to find out what was wrong. K.E.'s mother's question was not leading or suggestive. Additionally, the forensic interviewer met with K.E. and K.E. disclosed M.A.G.'s actions. There is nothing in our record to show the forensic interviewer used leading or suggestive questions. Accordingly, substantial evidence exists to support the trial court's finding that "K.E.'s statements were spontaneous as defined by the case law." CP at 36 (Finding of Fact 4).

5.  *Ryan* Factor Five – Timing of Declaration and Relationship between Declarant and Witness

M.A.G. next argues that the trial court did not properly address factor five regarding K.E.'s statement to her mother. Specifically, M.A.G. argues the trial court did not consider that there was prior sexual abuse within the family that affected the timing of K.E.'s disclosure and that K.E.'s mother would naturally want to protect her daughter.

Factor five relates to "'the timing of the declaration and the relationship between the declarant and the witness.'" *Ryan*, 103 Wn.2d at 176 (quoting *Parris*, 98 Wn.2d at 146). In addressing factor five, the trial court found, "There is nothing about the timing of K.E.'s statements that suggests an improper motive, nor does anything about the relationship between K.E. and the persons she talked to." CP at 36. And the trial court in its oral ruling stated, "I'm not convinced that there was a set plan to plant this in her head by an adult and get her involved in a feud between the mother and the daughter or any other member of the family." 2 VRP (Sept. 20, 2016) at 227. The trial court continued:

> The timing of the declaration in relationship between the declarant and the witness, it doesn't shock the conscience that she would disclose these things to her mother. The timing of the declaration was certainly within reason in terms of its

7

proximity to when the alleged event occurred. This is not five years later, two years later or even a year later. This is within a fairly short period of time.

2 VRP (Sept. 20, 2016) at 227.

Contrary to M.A.G.'s assertion, the trial court considered whether K.E.'s disclosure was prompted by a family feud and the timing of K.E.'s disclosure. Accordingly, the trial court did not abuse its discretion in addressing factor five.

6.      *Ryan* Factor Six – Assertion of Past Fact

Next, M.A.G. argues the trial court failed to address the sixth factor in deciding K.E.'s reliability. (Br. of Appellant at 9). However, the sixth factor, whether the statements contained express assertions of past fact, need not be satisfied "so long as other factors indicating reliability are considered." *Young*, 62 Wn. App. at 902. Because there were other factors that went toward K.E.'s reliability, the trial court did not abuse its discretion by not considering the sixth factor.

In sum, the trial court did not abuse its discretion because it followed the requirements of RCW 9A.44.120 and analyzed the child hearsay statements under the *Ryan* factors.

B.      RIGHT TO JURY IN JUVENILE PROCEEDINGS

M.A.G. next contends he was denied his constitutional right to a jury. We disagree.

It is a statutory requirement that juvenile cases be tried without a jury. RCW 13.04.021(2). Our Supreme Court has consistently rejected arguments that this statute violates the jury right guaranteed by the state and federal constitutions. *See*, e.g., *State v. Chavez*, 163 Wn.2d 262, 264, 180 P.3d 1250 (2008); *State v. Schaaf*, 109 Wn.2d 1, 4, 743 P.2d 240 (1987); *State v. Lawley*, 91 Wn.2d 654, 655, 591 P.2d 772 (1979). The court has reasoned that the juvenile system's emphasis on rehabilitation, rather than punishment, means that juvenile proceedings are not "criminal

prosecutions" to which the jury right attaches. *Chavez*, 163 Wn.2d at 267-68, 269; *Schaaf*, 109 Wn.2d at 4-5. We are bound by these decisions.[5] Therefore, M.A.G.'s jury right challenge fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Cruser, J.

---

[5] Whether the juvenile system has been so altered by recent developments that the jury right should extend to juveniles is a decision for a higher court or the legislature.