# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>        Respondent,<br><br>   v.<br><br>R.K.O.,<br><br>        Appellant. | No.  59135-9-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — R.K.O. appeals from his adjudication on one count of first degree child rape and one count of first degree child molestation, arguing that he was denied his constitutional right to a jury trial.  Because neither the United States Constitution nor our state constitution guarantees juveniles the right to a jury trial in juvenile proceedings, we affirm R.K.O.'s adjudications but remand with instructions to correct R.K.O.'s order on adjudication and disposition.

## FACTS

In June 2021, B.M.[1] accused her cousin, R.K.O., of sexually assaulting her.  The allegations were eventually reported to the police, and following an investigation, R.K.O. was charged as a juvenile with first degree rape of a child and first degree child molestation.  The charging period

---

[1] We use initials to protect the victim's identity and privacy interests.  *See* Gen. Order 2023-2 of Div. II, *Using Victim Initials* (Wash. Ct. App.), available at: https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2023-2&div=II.

was between October 1, 2020, and June 28, 2021. R.K.O. was between 12 and 13 years old at the time of the sexual assaults, while B.M. was 7 or 8.

R.K.O. was tried in juvenile court. At trial, B.M. testified that R.K.O. asked her to pull her pants down and perform oral sex on him, and that she did. B.M. also testified that R.K.O. touched her butt with "[h]is pee-pee" and kissed her on the mouth. 1 Verbatim Rep. of Proc. (VRP) (Aug. 21, 2023) at 39.

B.M.'s mother testified that B.M. disclosed that R.K.O. "would make her do oral sex to him and that he would touch her pee-pee." 1 VRP (Aug. 21, 2023) at 67. Jody Hawthorne, a forensic interviewer, also testified that B.M. disclosed that R.K.O. sexually abused her.[2] Lisa Wahl, a family nurse practitioner, testified that when she physically examined B.M., B.M. disclosed that R.K.O. "put his pee-pee in [B.M.'s] mouth more than one time." 1 VRP (Aug. 22, 2023) at 169. B.M. also disclosed that R.K.O. "put his pee-pee in [B.M.'s] vagina" and put his tongue in her mouth. 1 VRP (Aug. 22, 2023) at 169.

R.K.O. testified in his own defense. R.K.O. denied any sexual contact with B.M.

Following a bench trial, the juvenile court found R.K.O. guilty of first degree rape of a child and first degree child molestation. R.K.O. was sentenced to serve two consecutive terms of 15-36 weeks in the custody of the Juvenile Rehabilitation Administration.

R.K.O. appeals.

---

[2] An audiovisual recording of the forensic interview was admitted into evidence at trial but was not included in the record on appeal.

ANALYSIS

A.   CONSTITUTIONAL RIGHT TO A JURY TRIAL

1.   Federal Constitution

R.K.O. argues that because the Sixth Amendment to the United States Constitution does not distinguish between adults and juveniles, it "guarantees juveniles the right to a jury trial." Br. of Appellant at 29. We disagree.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed." U.S. CONST. amend. VI. As the U.S. Supreme Court has held, however, "trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement." *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971) (lead opinion of Blackmun, J.); *id.* at 555-56 (concurring opinion in part by Brennan, J.); *see also United States v. Juvenile*, 228 F.3d 987, 990 (9th Cir. 2000) ("There is no constitutional right to be tried as a juvenile, nor does the Constitution require that juvenile proceedings be by indictment or jury trial."), *cert. denied*, 531 U.S. 1174 (2001).

R.K.O. acknowledges *McKeiver*'s holding but argues that subsequent case law from the U.S. Supreme Court "demonstrate[s] that in interpreting the Sixth Amendment, issues of reliability, efficiency, and semantics are unimportant. The only relevant question is the 'original meaning' of the Sixth Amendment right to trial by jury." Br. of Appellant at 32 (quoting *Erlinger v. United States*, 602 U.S. 821, 823, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024)). However, neither *Erlinger* nor the other U.S. Supreme Court cases R.K.O. cites mentioned, let alone discussed or overturned *McKeiver*. In fact, none of the cases concerned juvenile adjudications. *See Erlinger*,

3

602 U.S. at 825 ("The question we face is whether a judge may decide that a[n adult] defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt."); *Hurst v. Florida*, 577 U.S. 92, 94, 136 S. Ct. 616, 193 L. Ed. 2d 504 (2016) (holding that a "sentencing scheme" allowing a judge to impose the death penalty upon a jury's "mere recommendation" was "unconstitutional" because "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death."); *Alleyne v. United States*, 570 U.S. 99, 116, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) (holding that "facts that increase mandatory minimum sentences must be submitted to the jury."); *Blakely v. Washington*, 542 U.S. 296, 298, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (analyzing whether the Sixth Amendment requires that a jury, rather than a judge, find aggravating circumstances that increase a sentence beyond the statutory maximum).

Moreover, while the Sixth Amendment may not appear to distinguish between adults and juveniles, it does impliedly distinguish between "criminal prosecutions" and other legal proceedings, extending the jury trial right only to those "accused" in a "criminal prosecution[]." U.S. CONST. amend. VI . "[T]he juvenile court proceeding has not yet been held to be a 'criminal prosecution,' within the meaning and reach of the Sixth Amendment," and R.K.O. fails to cite to a U.S. Supreme Court case, or even to any federal case, holding that a juvenile adjudication is synonymous with a criminal prosecution. *McKeiver*, 403 U.S. at 541.[3] Thus, because the Sixth

---

[3] We note that the U.S. Code distinguishes between criminal prosecutions and "juvenile delinquency" proceedings:

Amendment does not guarantee juveniles the right to a jury trial, R.K.O. did not have a federal constitutional right to a jury trial.

2.      Washington Constitution

R.K.O. also argues that he has a constitutional right to a jury trial under article I, sections 21 and 22 of the Washington State Constitution. We disagree.

Article I, section 21 states that the "right of trial by jury shall remain inviolate." Article I, section 22 states that "[i]n criminal prosecutions, the accused shall have the right . . . to have a speedy public trial by an impartial jury." However, "[c]ases in the juvenile court shall be tried without a jury." RCW 13.04.021(2). Thus, while not phrased as such, R.K.O.'s argument attacks the constitutionality of RCW 13.04.021(2). "We review the constitutionality of a statute de novo." *State v. Chavez*, 163 Wn.2d 262, 267, 180 P.3d 1250 (2008).

Washington courts have consistently held that juveniles do not have a constitutional right to a jury trial in juvenile proceedings. *See id.* at 266, 271, 274 (holding no right to a jury trial in juvenile proceedings under article I, sections 21 and 22 of the Washington Constitution or under the Sixth Amendment to the U.S. Constitution); *Monroe v. Soliz*, 132 Wn.2d 414, 419, 939 P.2d 205 (1997) (holding RCW 13.40.280 does not violate an individual's right to a jury trial because

---

For the purposes of . . . chapter [403, Juvenile Delinquency], a 'juvenile' is a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday, and 'juvenile delinquency' is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult or a violation by such a person of section 922(x).

18 U.S.C. § 5031.

an individual does not have that right in a juvenile proceeding); *State v. Schaaf*, 109 Wn.2d 1, 21, 743 P.2d 240 (1987) (holding a jury trial is not constitutionally guaranteed in juvenile proceedings); *State v. Lawley*, 91 Wn.2d 654, 659, 591 P.2d 772 (1979) (holding "jury trials are not necessary in juvenile adjudicatory proceedings"); *Estes v. Hopp*, 73 Wn.2d 263, 268, 438 P.2d 205 (1968) (concluding the right to a jury trial does not apply in juvenile adjudicatory proceedings); *State v. J.K.T.*, 11 Wn. App. 2d 544, 571-72, 455 P.3d 173 (2019) (holding that article I, sections 3 and 21 of the Washington Constitution do not guarantee juveniles the right to a jury trial), *review denied*, 195 Wn.2d 1017 (2020).

R.K.O. argues that our state constitution is "more protective of the right to a jury trial than the federal constitution," citing *State v. Smith*, 150 Wn.2d 135, 151, 75 P3d 934 (2003), in support.[4] Br. of Appellant at 8. But in *Schaaf*, our Supreme Court addressed whether article I, sections 21 and 22 of the Washington Constitution should be interpreted more broadly than their federal counterpart. 109 Wn.2d at 13. After applying the *Gunwall* factors, our Supreme Court held "that juvenile offenders are not entitled to jury trials under our state constitution." *Id.* at 16.

Our Supreme Court decided *Smith* after *Schaaf*. In *Smith*, the appellant argued "that based on an analysis of the factors laid out in *State v. Gunwall*, . . . the Washington Constitution provides greater protection of the jury trial right than does the federal constitution." 150 Wn.2d at 144.

---

[4] R.K.O. also cites *State v. Williams-Walker*, 167 Wn.2d 889, 225 P.3d 913 (2010). There, our Supreme Court explained that article I, section 21 of the Washington Constitution had been interpreted to mean "that *in some circumstances*, our state constitution provides greater protection for jury trials than the federal constitution." *Id.* at 896 (emphasis added). However, the defendants in *Williams-Walker* were not juveniles, and the court addressed whether a sentencing enhancement "must be authorized by the jury in the form of a special verdict," and concluded such an enhancement must be so authorized. *Id.* at 900. Thus, *Williams-Walker* does not support R.K.O.'s argument.

And our Supreme Court ultimately concluded that the *Gunwall* factors "indicate[d] that the right to a jury trial *may be* broader under article I, sections 21 and 22 than under the federal constitution." *Id.* at 156 (emphasis added). However, just five years later, our Supreme Court reaffirmed that article I, sections 21 and 22 do not provide juveniles the right to a jury trial in juvenile proceedings. *Chavez*, 163 Wn.2d at 272. In doing so, the court in *Chavez* specifically reaffirmed the analysis of the *Gunwall* factors employed in *Schaaf*. *Id.* at 269.

R.K.O. argues that in *Smith*, our Supreme Court "disavowed the *Gunwall* analysis performed in *Schaaf* because it erroneously examined legislation enacted after the adoption of the constitution and thus could not have affected the drafters' intent in writing article I, § 21 and § 22." Br. of Appellant at 11 n.4; *see also* Reply Br. of Appellant at 3 ("[I]t is well settled that article I, sections 21 and 22 are interpreted independently of the Sixth Amendment." (citing *Smith*, 150 Wn.2d at 156)). R.K.O. misinterprets *Smith*. In *Smith*, our Supreme Court conducted a *Gunwall* analysis to determine whether the Washington constitution was more protective of the right to a jury trial than the federal constitution. *Smith*, 150 Wn.2d at 149. In addressing the third and fourth *Gunwall* factors—"State Constitutional and Common Law History and Preexisting State Law"—our Supreme Court explained that a 1903 statute "could not have had any effect on the drafters' intent when they wrote article I, sections 21 and 22" because the statute "was not enacted until after the constitution was adopted." *Id.* at 152, 154. However, in its discussion of the third and fourth *Gunwall* factors, the *Smith* court did not cite, mention, or discuss *Schaaf*, let alone "disavow" its *Gunwall* analysis. Moreover, R.K.O.'s argument ignores that our Supreme Court has expressly reaffirmed *Schaaf*'s *Gunwall* analysis in *Chavez*. In fact, R.K.O. fails to even acknowledge the holding of *Chavez*, either in the opening or reply brief.

Because our state constitution is not more protective of a juvenile's right to a jury trial than the federal constitution and because Washington courts have consistently held that juveniles do not have a constitutional right to a jury trial in juvenile proceedings, R.K.O.'s argument fails.

B.    COMMUNITY SUPERVISION

R.K.O. argues the juvenile court erred by sentencing him to community supervision. The State concedes the error but argues it was harmless. We agree with R.K.O. and remand for correction of R.K.O.'s order on adjudication and disposition.

"'Community supervision' means an order of disposition by the court of an adjudicated youth not committed to the department or an order granting a deferred disposition." RCW 13.40.020(5). "A court may not order community supervision when an offender is committed to DCYF," the Department of Children, Youth, and Families. *State v. D.K.V.*, 16 Wn. App. 2d 938, 942, 483 P.3d 813 (2021).

Here, R.K.O. was committed to DCYF for two consecutive terms of 15-36 weeks. Under section 4.7 of R.K.O.'s order on adjudication and disposition, the box for "Minimum Parole Supervision" is checked but "Community Supervision" is not. Clerk's Papers (CP) at 58. However, under section 4.14, "Conditions of Supervision," several conditions are checked. CP at 59. Thus, to the extent the juvenile court imposed community supervision, it erred.

The State concedes that "[b]ecause the trial court correctly imposed commitment to DCYF, the checked boxes under community supervision appear to have been a scrivener's error." Br. of Resp't at 40. However, the State argues that remand is not necessary because any error was harmless: "remand in this instance does not appear necessary because the order on adjudication

8

clearly did not impose community supervision. . . . The inadvertently checked boxes have no affect [sic] because no community supervision was ordered." Br. of Resp't at 40-41.

At sentencing, the State informed the juvenile court that pursuant to case law and statute, the trial court "has absolutely no authority . . . to impose any other conditions of sentence if the court were to impose 15 to 36 weeks on both counts." VRP (Nov. 30, 2023) at 16. When pronouncing its sentence, the juvenile court stated, "The court is issuing a sentence consistent with the State's recommendation of 15 to 36 weeks." VRP (Nov. 30, 2023) at 39-40. However, despite committing R.K.O. to DCYF, the plain language of RCW 13.40.020(5), and the State's warning to the juvenile court, the juvenile court imposed several conditions of community supervision. This was error. *See In re Postsentence Rev. of Roberts*, 30 Wn. App. 2d 857, 861-62, 546 P.3d 1084 (2024) ("A trial court may impose only a sentence that is authorized by statute. The trial court's discretion in sentencing is limited to discretion specifically conferred by the legislature." (internal citation omitted)).

Moreover, even if harmless error applies as argued by the State, the error was not harmless.[5] Here, the juvenile court expressly imposed conditions that a supervising governmental agency will be enforcing against R.K.O. Thus, without correction of the juvenile court's error, R.K.O. will be required to comply with, and be subject to consequences for failing to comply with, conditions that should never have been imposed. This cannot be harmless.

---

[5] We note that the State cites no authority that harmless error applies to scrivener's errors or community supervision conditions. In fact, in *State v. Kelly*, 102 Wn.2d 188, 199, 685 P.2d 564 (1984), the case cited by the State to demonstrate the harmless error standard, our Supreme Court addressed "evidentiary error" at trial, not any sentencing related errors. Even assuming without deciding that harmless error does apply, any error here was not harmless.

As R.K.O.'s order on adjudication and disposition erroneously imposes conditions of community supervision, we accept the State's concession that the juvenile court erred. Accordingly, we remand to the juvenile court with instructions to strike the conditions of community supervision erroneously imposed in R.K.O.'s order on adjudication and disposition.

CONCLUSION

Because juveniles do not have a constitutional right to a jury trial in juvenile proceedings under either the federal constitution or our state constitution, we affirm R.K.O.'s adjudications. However, we remand to the juvenile court to strike the community supervision conditions erroneously imposed in R.K.O.'s order on adjudication and disposition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Glasgow, J.

_____
Veljacic, A.C.J.