# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53841-5-II |
| Respondent, | |
| v. | |
| S.D.H., | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — SDH pleaded guilty in juvenile court to one count of first degree

robbery and was sentenced under the Juvenile Justice Act (JJA) of 1977.[1] The juvenile court

denied his request for a manifest injustice disposition downward.[2] He now appeals, making two

arguments. First, he argues that under *Houston-Sconiers*,[3] the juvenile court had complete

discretion to impose a manifest injustice disposition downward without his having to show that

the standard range disposition would impose an excessive penalty on him. Second, he argues

that the application of the JJA violated the equal protection clause[4] because it requires a juvenile

---

[1] Chapter 13.40 RCW.

[2] A "manifest injustice" is a "disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of [the JJA]." RCW 13.40.020(19).

[3] 188 Wn.2d 1, 391 P.3d 409 (2017).

[4] U.S. CONST. amend. XIV; WASH. CONST. art. I, § 12.

offender in juvenile court to prove that a standard range would effectuate a manifest injustice by clear and convincing evidence—a burden not imposed on juveniles sentenced in adult court.

We hold that *Houston-Sconiers* does not apply to juvenile defendants sentenced in juvenile court. We also hold that the standard of proof for a manifest injustice disposition downward under the JJA does not constitute a violation of equal protection. Consequently, we affirm SDH's disposition.

## FACTS

### I. UNDERLYING FACTS

When SDH was 15 years old, he entered a gas station convenience store wearing a mask and a dark hooded sweat shirt to cover his face. He was armed with a toy replica handgun that he had altered to appear to be a real firearm. SDH pointed the gun at the store clerk and demanded that she give him money from the register or that he would "f**k [her] up." Clerk's Papers (CP) at 2. After taking approximately $300 in cash, SDH fled the scene.

The store clerk called the police and reported that she recognized the voice of the robber as that of a former employee's son, SDH. Police officers located and detained SDH, who later admitted to committing the robbery. Police searched SDH's home and found the clothing, backpack, mask, and gun used during the robbery. The State charged SDH in juvenile court with one count of first degree robbery.[5]

---

[5] RCW 9A.56.200(1)(a)(ii), .190.

II. DISPOSITION HEARING

SDH pleaded guilty as charged. SDH had an offender score of 0 points, and so faced a standard range disposition of 103 to 129 weeks at a rehabilitation administration facility.

At the disposition hearing, SDH asked the court for a manifest injustice disposition downward under RCW 13.40.150. SDH argued that a standard range disposition would impose an excessive penalty on him and that there was clear and convincing evidence to support a manifest injustice disposition downward. SDH also argued that our Supreme Court's holding in *Houston-Sconiers* rendered his standard range sentence unconstitutional because it did not take into account his youthfulness. Specifically, SDH argued that the strictly age-based standard disposition ranges failed to take into account mitigating factors of youthfulness beyond mere age, and consequently, *Houston-Sconiers* compelled the court to consider these additional factors when sentencing a juvenile, even in juvenile court.

SDH called Marty Beyer, Ph.D., an expert in psychology and child development, to testify at the disposition hearing. Dr. Beyer testified about an adolescent development assessment she performed on SDH. Dr. Beyer stated that although SDH suffered from significant immaturity, developmental disabilities, and childhood trauma that resulted in clinical depression and post-traumatic stress disorder, she was "optimistic" that services and rehabilitation would successfully address these areas. Verbatim Report of Proceedings (VRP) at 28. Dr. Beyer further testified that the combination of SDH's immaturity and disabilities, along with a fearfulness about his family's financial situation, contributed to SDH's commission of the robbery. Dr. Breyer opined that, based on SDH's conditions and the resources available in a

state facility versus in the community, a state facility would lead to "a continuation of the behavior that's not desired." VRP at 59.

The juvenile court further ruled that there was not clear and convincing evidence showing a basis to support a manifest injustice. Consequently, the court rejected SDH's request for a manifest injustice disposition and ordered a standard range disposition of "103 to 129 weeks at a rehabilitation administration facility, credit for time served." VRP at 127. The court further ruled that the statutory range for the crime of first degree robbery was constitutional because "the Legislature [had] considered many factors when determining an appropriate range for youth" in designing a sentencing framework "set up in consideration of sentencing juveniles." VRP at 122-23.

The juvenile court carefully considered each of the mitigating factors under RCW 13.40.150 and determined that none of them applied, stating:

> Next, to look at the mitigating factors set forth in that statute: "(1) the Respondent's conduct neither caused nor threatened serious bodily injury, or the Respondent did not contemplate that his or her conduct would cause or threaten serious bodily injury." Under this factor, whether it was a fake gun or not, the victim in this case feared for her life. So, there is no question that the conduct did, in fact, threaten serious bodily injury based on his actions. Therefore, the factor does not apply.
>
> "(2) the Respondent acted under strong and immediate provocation." The Court does not find that this applies. Not only did the Respondent talk about this beforehand, but [he] stayed up all night thinking about what he was going to do. He wore a hoodie to hide his face. He hid the evidence. Thus, this factor, again, does not apply.
>
> "(3) the Respondent was suffering from a mental or physical condition that significantly reduced his or her culpability for the offense, though failing to establish a defense." It is clear that the Respondent has had a history of trauma in his life from a variety of sources, but there was nothing that presented that showed he was suffering from a mental or physical condition that significantly reduced his culpability for the offense. It is without doubt that he needs help, as presented by

4

the Defense.  But the Court does not see that as a mitigating factor.  Therefore, the factor does not apply.

"(4) prior to his or her detection the Respondent compensated or made a good faith attempt to compensate the victim for the injury or loss sustained."  The Court is not aware of any requested or offered compensation; to attempt to compensate the victim for injury or loss.  The money he stole was given to his mother to hide.  Therefore, this factor does not apply.

And "(5) there's been at least one year between the Respondent's current offense and any prior criminal offense."  The Respondent does not have any prior criminal history, so this factor would not apply.

VRP at 123-124.[6]

Regarding the testimony of Dr. Beyer, the juvenile court stated that it

[did] not find that any of this information [was] applicable within the framework set up by the Legislature in mitigating the sentence.  Even if the Court could— would find it more appropriate to tailor a sentence according to a specific person, which the Court does not find under these circumstances, the Court does not see the success of rehabilitating the Respondent in a safe and productive manner such that the Respondent would, in fact, participate in the plan for the extensive time necessary to make it a successful plan.

VRP at 126-27.

SDH appeals the juvenile court's disposition order.

ANALYSIS

SDH makes two arguments challenging his disposition.  First, he argues that *Houston-Sconiers* extends to juvenile dispositions under the JJA, such that the juvenile court has complete discretion to consider mitigating circumstances of youth during disposition.  Second, he argues

---

[6] SDH states in his brief that "[the juvenile court] proceeded to go through each of the factors enumerated in RCW 9.94A.535(1)," which apply under the Sentencing Reform Act (SRA) of 1981, chapter 9.94A RCW.  Br. of Appellant at 13.  However, the court discussed only the factors under RCW 13.40.150, which apply under the JJA.

that the clear and convincing standard of proof for establishing manifest injustice in a juvenile court under the JJA is a violation of equal protection. We disagree.

## I. STANDARD OF REVIEW

We review questions of statutory and constitutional interpretation under the de novo standard of review. *State v. Hunley*, 175 Wn.2d 901, 908, 287 P.3d 584 (2012). We presume statutes to be constitutional and "the challenger must show the statute is unconstitutional beyond a reasonable doubt." *Hunley*, 175 Wn.2d at, 908.

## II. JUVENILE JUSTICE ACT PRINCIPLES

The standard range disposition of a juvenile offense is determined according to RCW 13.40.0357. RCW 13.40.160. These ranges are based in part on the age of the juvenile, the type of offense committed, and the juvenile's criminal history. RCW 13.40.0357. An offender is either committed to the custody of the State through Department of Children, Youth, and Families (DCYF), or put under community supervision, depending on the seriousness of the offense. *Id*. DCYF operates various rehabilitation facilities of varying security levels and group homes. *See* chs. 72.05, 72.16-72.20 RCW. Unlike the Sentencing Reform Act (SRA) of 1981,[7] which limits conditions of supervision to those related to the underlying offense, the JJA permits juvenile courts to impose any conditions of supervision it deems necessary to meet the needs of the juvenile and to effectuate the rehabilitative and accountability goals of the JJA. *State v. H.E.J.*, 102 Wn. App. 84, 87, 9 P.3d 835 (2000).

---

[7] Ch. 9.94A RCW.

A juvenile court may impose a disposition outside the standard range if it finds by clear and convincing evidence that a disposition within the standard range would effectuate a manifest injustice. RCW 13.40.0357, .160(2). The legislative intent of the JJA was to codify "a system capable of having primary responsibility for, being accountable for, and responding to the needs of youthful offenders and their victims." RCW 13.40.010(2).

> To effectuate these policies, the legislature declares the following to be equally important purposes of this chapter:
> (a) Protect the citizenry from criminal behavior;
> (b) Provide for determining whether accused juveniles have committed offenses as defined by this chapter;
> (c) Make the juvenile offender accountable for his or her criminal behavior;
> (d) Provide for punishment commensurate with the age, crime, and criminal history of the juvenile offender;
> (e) Provide due process for juveniles alleged to have committed an offense;
> (f) Provide for the rehabilitation and reintegration of juvenile offenders;
> (g) Provide necessary treatment, supervision, and custody for juvenile offenders;
> (h) Provide for the handling of juvenile offenders by communities whenever consistent with public safety;
> (i) Provide for restitution to victims of crime;
> (j) Develop effective standards and goals for the operation, funding, and evaluation of all components of the juvenile justice system and related services at the state and local levels;
> (k) Provide for a clear policy to determine what types of offenders shall receive punishment, treatment, or both, and to determine the jurisdictional limitations of the courts, institutions, and community services;
> (l) Provide opportunities for victim participation in juvenile justice process, including court hearings on juvenile offender matters, and ensure that Article I, section 35 of the Washington state Constitution, the victim bill of rights, is fully observed; and
> (m) Encourage the parents, guardian, or custodian of the juvenile to actively participate in the juvenile justice process.

RCW 13.40.010(2).

A disposition is clearly excessive "'only when it cannot be justified by any reasonable view which may be taken of the record.'" *State v. T.E.C.*, 122 Wn. App. 9, 17, 92 P.3d 263

(2004) (quoting *State v. Tauala*, 54 Wn. App. 81, 87, 771 P.2d 1188 (1989)).  It is proper for a

trial court to consider a juvenile's need for treatment in relation to a manifest injustice

determination.  *T.E.C.*, 122 Wn. App. at 17.  "Generally, a standard range disposition will be

adequate to achieve the goals of the [JJA], including the goal of rehabilitation."  *State v. Tai N.*,

127 Wn. App. 733, 745, 113 P.3d 19 (2005).

Generally, the juvenile court is not required to make a record of its reasons for a standard

range disposition.  *State v. Malychewski*, 41 Wn. App. 488, 489, 704 P.2d 678 (1985).  The

legislature does, however, provide a list of mitigating factors that a juvenile court must consider,

on the record, before ordering a disposition:

> (i) The respondent's conduct neither caused nor threatened serious bodily injury or the respondent did not contemplate that his or her conduct would cause or threaten serious bodily injury;
> (ii) The respondent acted under strong and immediate provocation;
> (iii) The respondent was suffering from a mental or physical condition that significantly reduced his or her culpability for the offense though failing to establish a defense;
> (iv) Prior to his or her detection, the respondent compensated or made a good faith attempt to compensate the victim for the injury or loss sustained; and
> (v) There has been at least one year between the respondent's current offense and any prior criminal offense;

RCW 13.40.150(h).  *Malychewski*, 41 Wn. App. at 489-90.  These factors supplement the

legislative intent provided under RCW 13.40.010(2) in order to "prevent arbitrary and

discriminatory application of the manifest exception."  *State v. Rhodes*, 92 Wn.2d 755, 759, 600

P.2d 1264 (1979), *overruled on other grounds*, *State v. Baldwin*, 150 Wn.2d 448, 78 P.3d 1005

(2003).  The juvenile court is not, however, limited to consideration of just these statutory

factors.  *Rhodes*, 92 Wn.2d at 759.

8

Once a juvenile court determines a manifest injustice would result from a standard range disposition, it possesses wide discretion in determining a different disposition, but with certain limitations provided by RCW 13.40.030. *State v. Beaver*, 148 Wn.2d 338, 347, 60 P.3d 586 (2002) (noting that there was no statutory limitation to the court's discretion prior to 1979 when cross-reference to RCW 13.40.030 was added). If a juvenile court imposes a manifest injustice disposition, the disposition order must specify the court's reasons for going outside the standard range. JuCR 7.12(e). *State v. Strong*, 23 Wn. App. 789, 793, 599 P.2d 20 (1979).

## III. DISCUSSION

A.    Houston-Sconiers *Discretion Does Not Extend to Dispositions under the JJA*

SDH argues that *Houston-Sconiers* applies when a juvenile offender faces adjudication and disposition under the JJA, such that the juvenile court has complete discretion to consider mitigating circumstances of youth during disposition. We hold that *Houston-Sconiers* does not apply to juvenile offender dispositions in juvenile court.

In *State v. Houston-Sconiers*, a case rooted in the Eighth Amendment to the United States Constitution, our Supreme Court recognized that "children are different." 188 Wn.2d 1, 18, 391 P.3d 409 (2017) (quoting *Miller v. Alabama*, 567 U.S. 460, 480, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)). In *Houston-Sconiers*, two people committed a string of armed robberies as juveniles and were convicted in adult court on numerous felonies. 188 Wn.2d at 9. At sentencing, the trial court heard mitigating testimony about each defendant's traumatic childhood, but it then erroneously concluded that it was "[unable] to exercise greater discretion over the sentences imposed." 188 Wn.2d at 13. Because of firearm enhancements, the trial court

9

imposed lengthy sentences without the possibility of early release, which it reasoned it was compelled to do. 188 Wn.2d at 13, 22.

Invoking *Miller*,[8] our Supreme Court reversed and remanded for resentencing. 188 Wn.2d at 21, 34. The court imposed a positive duty upon superior courts under the Eighth Amendment to consider mitigating factors of a juvenile defendant's youthfulness during an adult sentencing proceeding, and holding that courts had "absolute discretion" to depart downward from standard sentencing ranges. 188 Wn.2d at 9. But our Supreme Court has not extended this rule to juvenile court dispositions for juvenile offenders.

When our Supreme Court has applied *Houston-Sconiers*, it has done so only in the adult court context. In two recent companion cases applying the *Houston-Sconiers* rule retroactively, our Supreme Court stated that the new rule was "material to adult standard range sentences imposed for crimes the defendant committed as a child." *In re Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 265, 474 P.3d 524 (2020); *see also In re Pers. Restraints of Ali*, 196 Wn.2d 220, 474 P.3d 507 (2020) (holding *Houston-Sconiers* was material to the case where a defendant was sentenced to a standard adult range under the SRA). Our Supreme Court has continued to apply *Houston-Sconiers* only in cases where a juvenile was sentenced in adult court. *E.g.*, *State v. Cuahutemoc Vazquez*, 195 Wn.2d 1023, 464 P.3d 230 (2020)); *see also State v.*

---

[8] The *Miller* court stated, "[C]hildren are constitutionally different from adults for sentencing purposes . . . 'they are less deserving of the most severe punishments' . . . '[they have a] lack of maturity and an underdeveloped sense of responsibility' . . . children are 'more vulnerable . . . to negative influence and outside pressures' . . . [they] lack the ability to extricate themselves from horrific, crime-producing settings." 567 U.S. at 471 (quoting *Graham v. Florida*, 560 U.S. 48, 68, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)) (quoting Roper v. Simmons, 543 U.S. 551, 569, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)).

*Gregg*, 196 Wn.2d 473, 482, 474 P.3d 539 (2020) (citing *Houston-Sconiers*, stating, "As a whole, our cases recognize that children are different and procedural differences exist for juveniles sentenced in adult court."); *Gilbert*, 193 Wn.2d at 177 (holding a defendant originally sentenced as a juvenile for six offenses in adult court was entitled to *Houston-Sconiers* discretion for an exceptional sentence downward even where only issue on remand was adjusting his aggravated murder sentence in light of legislation eliminating mandatory sentences of life without parole for juvenile offenders); *State v. Watkins*, 191 Wn.2d 530, 536-537, 423 P.3d 830 (2018) (reasoning that the juvenile court's automatic decline of jurisdiction does not implicate the Eighth Amendment because adult courts have discretion to depart from the adult standard range under *Houston-Sconiers*); *State v. Bacon*, 190 Wn.2d 458, 467-68, 415 P.3d 207 (2018) (rejecting the argument that *Houston-Sconiers* permits juvenile courts to suspend dispositions, holding that juvenile courts are limited to the discretion provided by statute for a finding of manifest injustice where no such discretion is provided).

Here, SDH argues that *Houston-Sconiers* applies to juvenile disposition hearings such that juvenile courts possess absolute discretion to impose a downward disposition based on the mitigating circumstances of youth. But *Houston-Sconiers* made clear that children must be treated differently *from adults*. Moreover, our Supreme Court has only applied *Houston-Sconiers* to juvenile defendants sentenced in adult court. *E.g.*, *Vazquez*, 195 Wn.2d at 1023. Finally, the JJA, as opposed to the SRA, exists to address the unique issues of juvenile justice, including rehabilitation and accountability. Consequently, we hold that *Houston-Sconiers* did not apply to SDH when he was sentenced in juvenile court.

We also note that extending *Houston-Sconiers* to the juvenile courts would give juvenile courts unintended discretion within a juvenile disposition scheme that already takes youthfulness into account. The legislature specifically made age a variable within the juvenile standard range disposition grid and, thus, consideration of age is already mandatory when a juvenile court determines an appropriate punishment. RCW 13.40.0357.

The JJA disposition scheme includes consideration of "the rehabilitation and reintegration, . . . necessary treatment, supervision, and custody" of juvenile offenders. RCW 13.40.010(2)(f), .010(2)(g). "Our juvenile justice system, however imperfectly . . . gives children far more opportunities for redemption and rehabilitation than our criminal justice system offers to adults. [O]ur juvenile system is focused on accountability and rehabilitation, not retribution." *Gregg*, 196 Wn.2d at 486 (Gonzales, J., dissenting) (citations omitted). SDH would have us disregard the sentencing scheme in favor of giving the juvenile court absolute discretion to impose a downward manifest injustice disposition. This would be in violation of the policies of the JJA. That would also impede upon the goals of proportionality and consistency in sentencing. *State v. McFarland*, 189 Wn.2d 47, 57, 399 P.3d 1106 (2017).[9]

---

[9] SDH notes that *Houston-Sconiers* states that the Eighth Amendment requires courts to exercise discretion in considering the mitigating qualities of youth "whether the youth is sentenced in juvenile or adult court." 188 Wn.2d at 18. SDH interprets this to mean that *Houston-Sconiers* grants juvenile court unbridled discretion in sentencing youth. But *Houston-Sconiers* was explaining that adult courts have the same discretion to consider mitigating circumstances of youth as juvenile courts. 188 Wn.2d at 18. And as discussed above, the juvenile justice system is designed to take the mitigating circumstances of youth into consideration.

B.      *Clear and Convincing Evidence Standard Does Not Violate Equal Protection*

SDH next argues that the JJA violates the equal protection clause under the Fourteenth Amendment because it unfairly discriminates against juveniles by requiring a court to find by clear and convincing evidence that mitigating factors exist before departing from a standard sentence disposition. He argues that an offender who is sentenced under the SRA has the less burdensome standard of preponderance of the evidence,[10] so RCW 13.40.160(2) is a violation of equal protection because juvenile offenders must meet the more burdensome clear and convincing evidence standard. We hold that the JJA does not violate equal protection.

"'The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.'" *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020) (quoting *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018)).[11] The first step in examining an equal protection violation claim is to determine whether the individual claiming the violation is similarly situated to another individual. *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006).

Equal protection does not require that the State treat all persons identically. *Osman*, 157 Wn.2d at 484. The classification must be relevant to the State's purpose in treating the classes

---

[10] Under the SRA, "[t]he court may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1).

[11] SDH cites to both the state and federal constitutions for his equal protection claim. Because they are "substantially identical and subject to the same analysis," we address the claim with a single analysis. *Osman*, 157 Wn.2d at 483 n.11.

disparately. *Osman*, 157 Wn.2d at 484. Courts employ different bases of review, depending on the nature of the alleged classification and the rights involved. *Osman*, 157 Wn.2d at 484. The three levels are strict scrutiny, intermediate scrutiny, and rational basis review. We apply strict scrutiny if the individual is a member of a suspect class or the state action threatens a fundamental right, intermediate scrutiny if the individual is member of a "semisuspect" class or that the state action threatens "important" rights, and the rational basis test if neither strict scrutiny nor intermediate scrutiny are applied. *Osman*, 157 Wn.2d at 484 (quoting *State v. Shawn P.*, 122 Wn.2d 553, 560, 859 P.2d 1220 (1993)). Here, the parties agree that the appropriate level of scrutiny is the rational basis review. Because SDH has not shown he is a member of a suspect or semisuspect class, we apply the rational basis review. *See Osman*, 157 Wn.2d at 486.

1. *Similarly Situated*

SDH argues that he is a member of a class that is treated disparately. But he does not clearly identify a classification or explain how he is similarly situated. He presumes, without argument or explanation, that juvenile offenders facing adjudication and disposition in juvenile court are similarly situated to defendants facing sentencing in adult court. The State does not address whether offenders sentenced under the SRA are similarly situated to juveniles sentenced under the JJA. We identify the classes of persons under our analysis in this case as defendants sentenced in adult court who committed crimes as juveniles, and juvenile offenders sentenced in juvenile court. We hold that these two classes are not similarly situated.

As a threshold requirement to his equal protection claim, SDH must show that he is a member of a class of similarly situated individuals and that he received disparate treatment

14

because of his membership in that class. *Thornock v. Lambo*, 14 Wn. App. 2d 25, 34, 468 P.3d 1074 (2020); *Osman*, 157 Wn.2d at 485. SDH does not address these requirements in his brief directly. Instead, SDH argues that the rational basis test applies to juveniles as a class and then argues that the JJA is irrational "in light of complete discretion adult court is afforded when sentencing children as adults."[12] Br. of Appellant at 22. We identify the two classifications here as defendants sentenced in adult court who committed their crimes as children and juvenile offenders sentenced in juvenile court.

SDH must then show that he and juvenile offenders in adult court are similarly situated. Although no case directly discusses these classifications in this context, our Supreme Court, in discussing codefendants, has explained that a defendant would need to show "near identical participation in the same set of criminal circumstances" to establish he is similarly situated to his codefendant in the same court. *State v. Handley*, 115 Wn.2d 275, 290, 796 P.2d 1266 (1990).

Division One of this court has held that juveniles in adult court are not similarly situated to juveniles in juvenile court. *State v. Manro*, 125 Wn. App. 165, 174, 104 P.3d 708 (2005). In *Manro*, the court held that a juvenile's equal protection claim failed when he argued that he would have received a lighter sentence in juvenile court. 125 Wn. App. at 175. Division One reasoned that Manro failed to meet the threshold requirements of an equal protection claim because "[t]wo juveniles are no longer similarly situated once they are sent on different paths, one in adult court and the other in juvenile." *Manro*, 125 Wn. App. at 175.

---

[12] But SDH also argues that the clear and convincing evidence standard violated the equal protection clause because "this standard is not required to prove a lesser sentence *for either children or adults in adult court*. RCW 9.94A.535(1)." Br. of Appellant at 24 (emphasis added).

Conversely, in *Harrison v. Kernan*, the Ninth Circuit Court of Appeals concluded that imprisoned men and women inmates of the same security classification (based on a challenged regulation) were similarly situated for purposes of equal protection. 971 F.3d 1069, 1076 (9th Cir. 2020). In that case, a male inmate alleged discriminatory treatment based on gender. 971 F.3d at 1071. The inmate argued that he and female inmates of the same security classification were similarly situated but that he was treated differently because he was male. *Harrison*, 971 F.3d at 1075. The Ninth Circuit agreed, reasoning that because the State used an identical methodology to determine the security classification of male and female inmates, that they were similarly situated because "the only relevant difference . . . [was] gender[,] . . . the critical independent variable." 971 F.3d at 1075.

The JJA and SRA have distinct legislative purposes, different sentencing schemes, and impose different consequences. An adjudication and disposition of a juvenile under the JJA does not result in prison time, RCW 13.40.0357, and does not result, as a matter of law, in a conviction of a crime. RCW 13.04.240. Juveniles under the JJA generally face substantially shorter terms of punishment than those under the SRA. *Compare* RCW 13.40.0357, *with* RCW 9.94A.510. Under the JJA, rehabilitation ranges are lower than standard sentencing ranges under the SRA, and a juvenile cannot be confined past age 25. RCW 13.35.0357, .40.300(2).

Juveniles in adult court and juveniles in juvenile court are not similarly situated. SDH's argument fails because the primary purpose of punishment versus the equally important purposes of accountability and rehabilitation are a "fundamental difference between juvenile courts and adult courts" that necessarily creates fundamentally different procedures and outcomes for

16

defendants and offenders within each scheme. *State v. Saenz*, 175 Wn.2d 167, 173, 283 P.3d 1094 (2012).

Because the two classes are not similarly situated, we hold that no equal protection analysis is required and that SDH's equal protection claim fails.

2. *Rational Basis*

Even if the classes were similarly situated, SDH's argument would still fail, because a rational basis exists for the disparate treatment. SDH argues that there is no rational basis for requiring children in juvenile court to meet a higher standard to prove mitigating factors. The State argues that because the SRA and the JJA are intended to accomplish different goals, the divergent classification treatment is relevant to achieving State objectives. We agree with the State.

The parties agree that we examine this action under the rational basis test. State action will be upheld under the rational basis test if there is a rational relationship between the classification and a legitimate state interest. *State v. Osman*, 157 Wn.2d at 485. "'The rational relationship test is the most relaxed and tolerant form of judicial scrutiny under the equal protection clause. Under this test, the legislative classification will be upheld unless it rests on grounds wholly irrelevant to achievement of legitimate state objectives.'" *In re Boot*, 130 Wn.2d 553, 573, 925 P.2d 964 (1996) (quoting *State v. Shawn P.*, 122 Wn.2d 553, 561, 859 P.2d 1220 (1993)).

"'The purposes underlying the juvenile system and the procedures designed to effect those purposes are significantly different from the purposes and procedures of the adult system.'" *State v. TC.*, 99 Wn. App. 701, 706-707, 995 P.2d 98 (2000) (quoting *State v. Rice*, 98 Wn.2d

384, 392, 655 P.2d 1145 (1982)). "Washington established a separate court division dedicated to juvenile issues with the intention of protecting the interests of juveniles, rather than prosecuting juveniles in the same manner as adult defendants." *Barr v. Snohomish Cnty. Sheriff*, 4 Wn. App. 2d 85, 89, 419 P.3d 867 (2018) (citing LAWS OF 1905, ch. 18, § 3), *rev'd on other grounds*, 193 Wn.2d 330 (2019).

The paramount purpose of the SRA is punishment,[13] while the JJA must balance the goals of rehabilitation with punishment. *T.C.*, 99 Wn. App. at 707. The JJA focuses on accountability and rehabilitation as equally important objectives. *See* RCW 13.40.010(2); Title 72.05 RCW.

Our Supreme Court recognized this important difference in *State v. S.J.C.*, 183 Wn.2d 408, 352 P.3d 749 (2015). In that case, the court recognized that the "current contours of Washington's juvenile justice system today reflect over a century of our lawmakers' best efforts to carefully balance the interests at stake in the context of juvenile justice," in determining that

---

[13] RCW 9.94A.010 provides:

The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:
(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
(2) Promote respect for the law by providing punishment which is just;
(3) Be commensurate with the punishment imposed on others committing similar offenses;
(4) Protect the public;
(5) Offer the offender an opportunity to improve himself or herself;
(6) Make frugal use of the state's and local governments' resources; and
(7) Reduce the risk of reoffending by offenders in the community.

experience and logic did not support the application of the open administration of justice provision of the state constitution. *S.J.C.*, 183 Wn.2d at 417. The court in *S.J.C.* reasoned that the differences between the juvenile system and adult courts made any analogy inapplicable to its analysis on whether a constitutional requirement recognized in one must necessarily be extended in the other. *S.J.C.*, 183 Wn.2d at 418. The court explained, "'If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence.'" *S.J.C.*, 183 Wn.2d at 418 (quoting *McKeiver v. Pennsylvania*, 403 U.S. 528, 551, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971)).

Our Supreme Court has also recognized that "because of well-defined differences between Washington's juvenile justice and adult criminal systems," the JJA does not violate another right enjoyed by defendants in adult court: the right to a trial by jury. *State v. Chavez*, 163 Wn.2d 262, 267, 180 P.3d 1250 (2008). In *Chavez*, the court rejected the argument that the court should depart from its precedent of comparing the adult and juvenile systems as a whole to instead focus on the way the system treats individual defendants in each case. 163 Wn.2d at 272. The court considered whether the JJA had been so altered by amendments as to change its rehabilitative nature. 163 Wn.2d at 269-71. The court adopted the reasoning of Division One of this court from *State v. J.H.*, 96 Wn. App. 167, 185, 978 P.2d 1121, *review denied*, 139 Wn.2d 1014 (1999), and concluded that it had not. In holding that juveniles were not entitled to a jury trial, the court reasoned that not even the most serious violent juvenile offenders are so divorced from the rehabilitative emphasis of the JJA as to be entitled to a trial by jury. *Chavez*, 163 Wn.2d 272.

Here, the State can show a rational basis for different sentencing requirements for adults and juveniles. The JJA's sentencing scheme takes a juvenile offender's age into account.[14] *Compare* RCW 9.94A.510, *with* RCW 13.40.0357. The SRA and JJA have different sentencing ranges and different purposes. Although similar, the statutory mitigating factors in the SRA and the JJA only supplement the purposes of the SRA and the JJA, which are the true constraints of a court's discretion when making a departure determination or a finding of manifest injustice.[15] The JRA's "clear and convincing" standard applies to a set of different goals and purposes than those of the SRA.

The legislature's decision to require a higher burden of proof to show that a disposition is clearly excessive under the JJA is rational in light of the fact that, unlike a court under the SRA where need for punishment is the core consideration, a court under the JRA has to balance the juvenile's need for treatment and rehabilitation. Custody may be necessary to obtain the treatment and rehabilitation necessary in order to protect the interests of the juvenile where

---

[14] For example, here, had SDH been one year older, he would have been in a higher sentencing range. RCW 13.40.0357.

[15] RCW 9.94A.535 provides a list of mitigating circumstances for adult sentencing courts to consider. This list allows the court to consider: (1) the role of the victim, (2) whether the defendant attempted to compensate for damages or injury, (3) whether the defendant was under duress or was induced to participate, (4) the defendant's mental capacity, (5) the defendant was a minor participant who exhibited sincere concern for the safety or well-being of the victim, (6) whether a standard range sentence is clearly excessive, (7) whether the crime was a response to a continuing pattern of abuse, and (8) whether the defendant made an effort to obtain medical assistance for someone experiencing a drug-related overdose.

Moreover, a sentencing court may consider additional factors, if they are consistent with the purpose of the SRA and are supported by evidence. *State v. Davis*, 146 Wn. App. 714, 721, 192 P.3d 29 (2008).

noncustodial treatment and rehabilitation will not. The standard range disposition, generally, is adequate to achieve rehabilitation. *Tai N.*, 127 Wn. App. at 745. The different treatment of juveniles under the SRA and JJA rationally relate to the goals of each statutory regime. Consequently, we hold that the requirement that a juvenile prove a mitigating factor by clear and convincing evidence does not violate equal protection.

CONCLUSION

We hold that the juvenile court did not err when it applied a guideline disposition without exercising absolute discretion from *Houston-Sconiers* because the court did not have discretion to do so and because the JJA's clear and convincing evidence standard for finding mitigating factors was not a violation of the equal protection clause. We affirm the juvenile court's adjudication and disposition.

Worswick, J.

We concur:

Maxa, J.

Sutton, A.C.J.